1
2
3
4
5
6          UNITED STATES  DISTRICT COURT
7          NORTHERN DISTRICT OF CALIFORNIA
8
9    FRED MCCULLOUGH,

10                    Petitioner,                    No. C 05-02207 MHP
            v.
11                                                   **MEMORANDUM & ORDER**
     ANTHONY P. KANE, Warden,                        **Re: Motion to Vacate June 13, 2007**
12                                                   **Order Staying Order That Petitioner Be**
                    Respondent.                      **Released From Prison**
13   _____/

14

15          Petitioner Fred McCullough, a prisoner at the Correctional Training Facility in Soledad,

16   seeks dissolution of a June 13, 2007 order that stayed his release from prison.  McCullough was

17   ordered released from prison on June 1, 2007 when the court granted a writ habeas corpus under 28

18   U.S.C. section 2254, but release was stayed pending the State's appeal.  See Docket No's. 11, 17.

19   Having considered the parties' arguments and submissions and for the reasons set forth below, the

20   court now vacates the stay and orders that petitioner be released from custody immediately.

21

22   BACKGROUND

23          The full recitation of the facts in this action can be found in the decision granting habeas

24   relief.  See Docket No. 11.  In short, Fred McCullough was convicted of second degree murder in

25   1983 in the Los Angeles County Superior Court and was sentenced to a term of 15 years to life in

26   prison.  His habeas petition did not concern that conviction directly, but instead focused on the

27   August 12, 2004 decision by Governor Arnold Schwarzenegger to reverse a March 17, 2004

28   decision by the Board of Prison Terms (now known as the Board of Parole Hearings ("BPH"))

1  finding him suitable for parole.  This was McCullough's second reversal: McCullough had also been

2  found suitable for parole by the BPH in 2002, but that was reversed by then-Governor Davis.

3  McCullough sought relief in the California courts.[1]  The California Court of Appeal denied

4  McCullough's petition for writ of habeas corpus in a one-sentence order citing In re Rosenkrantz, 29

5  Cal. 4th 616, 667 (2002).  Response, Exh. E.  The California Supreme Court summarily denied his

6  petition for review.

7  McCullough then filed his federal petition for writ of habeas corpus, asserting that his right

8  to due process had been violated.  On June 1, 2007 this court granted McCullough's petition, finding

9  that McCullough's crime and pre-offense criminality did not provide sufficient evidence to support

10  the Governor's decision finding petitioner unsuitable for parole.  See Docket No. 11.  Shortly

11  thereafter, on June 13, 2007 and prior to receiving McCullough's opposition, the court granted the

12  State's motion to stay McCullough's release pending appeal.  Id., No. 17.

13  On appeal, the parties conducted oral argument in front of the Ninth Circuit on December 3,

14  2007.  The next day, the Ninth Circuit ordered that the appeal be withdrawn from submission

15  pending the California Supreme Court's decisions in In re Shaputis, 2007 WL 2372405 (Cal. App.

16  Aug. 21, 2007), review granted (Oct. 24, 2007), and In re Lawrence, 150 Cal. App. 4th 1511 (2007),

17  review granted, 168 P.3d 869 (Sep. 19, 2007).  Noonan Dec., Exh. C (Ninth Circuit Order dated

18  December 4, 2007).  In both Shaputis and Lawrence, the California Courts of Appeal granted habeas

19  petitions after finding that the prisoners' offenses themselves were insufficient to demonstrate the

20  dangerousness required to deny parole.  Neither action has been fully briefed or scheduled for oral

21  argument before the California Supreme Court.  As a result, it is uncertain when they will be

22  resolved and at what point the Ninth Circuit will resume review of the State's appeal in this action.[2]

23

24  JURISDICTION

25  This court has jurisdiction to modify the order staying McCullough's release pursuant to

26  Rule 8(a) of the Federal Rules of Appellate Procedure.

27

28

1  DISCUSSION

2      Whether a prisoner's release may be stayed pending appeal requires balancing the four

3  factors prescribed by the Supreme Court in Hilton v. Braunskill, 481 U.S. 770 (1987).[3]  The four

4  factors considered are: "(1) whether the stay applicant has made a strong showing that he is likely to

5  succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3)

6  whether issuance of the stay will substantially injure the other parties interested in the proceeding;

7  and (4) where the public interest lies."  Id. at 776.  These four factors presumably suggested that a

8  stay was appropriate last June.[4]

9      Developments since the June 13, 2007 stay order include both an unforeseen delay on appeal

10 and the issuance of rulings by the California courts of appeals and the Ninth Circuit that favor

11 petitioner.  See Shaputis, 2007 WL 2372405; In re Dannenberg, 156 Cal. App. 4th 1387 (2007);

12 Hayward v. Marshall, 512 F.3d 536 (9th Cir. 2008).  As a result, the court will review and, as

13 appropriate, re-weigh the four Hilton factors to determine whether a stay of the release order

14 remains appropriate.

15

16         A.    The State's Likelihood of Success on the Merits

17     Under Hilton, the State must show that it has a strong or substantial likelihood of success on

18 appeal in order to stay the petitioner's release.  481 U.S. at 778.  The State's likelihood of success in

19 overturning this court's grant of the writ of habeas corpus depends on three considerations:

20 (1) whether the court applied the proper standard of review; (2) whether the court correctly applied

21 that standard; and (3) whether recent decisions by the Ninth Circuit and California courts of appeal

22 suggest a favorable outcome for the State upon appeal.

23         1.    The 'Some Evidence' Standard

24     The State contends it is likely to succeed on the merits on appeal because this court

25 incorrectly adopted the 'some evidence' standard set out in Sass v. California Board of Prison

26 Terms, 461 F.3d 1123, 1126–29 (9th Cir. 2006) (applying the Superintendent v. Hill, 472 U.S. 445,

27 454–55 (1985), some evidence standard for disciplinary hearings to review parole denials).  This

28

3

1    court applied this standard to review whether Governor Schwarzenegger's decision to deny parole

2    was supported by some evidence of parole unsuitability.  See Docket No. 11.

3         The some evidence standard is appropriate in the present action, as the court has previously

4    explained in its order granting the writ.  See id. at 4–5.  Furthermore, any lingering doubts about the

5    propriety of this standard in this context should have been dispelled by the Ninth Circuit during oral

6    argument in this action.  A judge on the panel cut short the State's argument that the some evidence

7    standard was inappropriate.  She stated that the Circuit has "held over and over again that the some

8    evidence rule applies in the parole context . . . as far as we're concerned it's settled law and not

9    worth going over again."  Ninth Circuit Oral Argument Audio File, available at

10   http://www.ca9.uscourts.gov/ca9/media.nsf/Media%20Search?OpenForm&Seq=2 (Case No.

11   07-16049 at 1:00–1:20) (last accessed Feb. 20, 2008).

12                    2.       Application of the 'Some Evidence' Standard

13        The State contends that even if the some evidence standard is appropriate, this court

14   misapplied that standard.  It argues that after acknowledging factors in support of the Governor's

15   decision—the "especially heinous" nature of the crime, the triviality of the motive and the escalating

16   criminality McCullough once exhibited—the court could not then determine that the some evidence

17   standard was not met.

18        The State mischaracterizes the nature of the standard by arguing that this court conceded the

19   existence of some evidence by recognizing the factors underlying the Governor's decision.  As the

20   Ninth Circuit has explained, "the test is not whether some evidence supports the reasons the

21   Governor cites for denying parole, but whether some evidence indicates a parolee's release

22   unreasonably endangers public safety."  Hayward, 512 F.3d at 543 (quoting In re Lee, 143 Cal. App.

23   4th 1400, 1408 (2006)).  The Ninth Circuit has also explained that the weight of evidence that

24   suggests parole unsuitability may change overtime.  See Biggs v. Terhune, 334 F.3d 910 (9th Cir.

25   2003); Sass, 461 F.3d 1123; Irons v. Carey, 479 F.3d 658 (9th Cir. 2007).

26        In Biggs, the Ninth Circuit upheld a parole denial based on the circumstances of the

27   prisoner's offense, but suggested that the weight of this evidence would decrease over time: "A

28

4

1  continued reliance in the future on an unchanging factor, the circumstance of the offense and

2  conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison

3  system and could result in a due process violation." 334 F.3d at 916–17.  The Ninth Circuit later

4  noted that in Biggs and other subsequent parole denials based on unchanging factors, the petitioners

5  had not completed their minimum sentences at the time their habeas petitions were heard.  Irons, 479

6  F.3d at 665; see also Sass, 461 F.3d 1123; Biggs, 334 F.3d 910.  This line of reasoning suggests to

7  this court that the Ninth Circuit is likely to agree with this court's analysis regarding petitioners who

8  have served far beyond their minimum sentences.

9       By warning that continued reliance on unchanging factors may violate due process, the Ninth

10  Circuit established a standard for district courts to apply in specific actions.  Here, analyzing

11  petitioner's commitment offense, the court found that the murder and pre-offense criminality in this

12  action are the kinds of immutable events that Biggs cautioned against relying upon to deny parole in

13  perpetuity.  See Docket No. 11 at 11–14; Biggs, 334 F.3d at 916–17.  Although the Governor's

14  decision would have been wholly appropriate ten or twenty years ago, it no longer comports with

15  due process because the passage of time, in addition to significant evidence of positive behavior,

16  reduces the current predictive value of the circumstances relied upon by the Governor.  In fact, the

17  circumstances relied upon by the Governor are now insufficient to constitute some evidence that

18  petitioner would pose an unreasonable risk of danger to society if paroled.

19       McCullough has surpassed his minimum sentence of fifteen years by at least six calendar

20  years, thereby making his situation more compelling than Irons, Sass or Biggs.  Further, he has been

21  found suitable for parole by two decision-making bodies, again making his situation more

22  compelling than Irons, Sass, or Biggs.  There was also considerable positive information about

23  petitioner when Governor Schwarzenegger considered this matter.  McCullough had not been issued

24  a disciplinary offense in the past nineteen years.  In addition, he had taken advantage of numerous

25  rehabilitation and enrichment programs in prison, such as: 1) obtaining a college degree;

26  2) participating in volunteer work; 3) taking courses in anger management and understanding the

27  impact of crimes on victims; 4) participating in Alcoholics Anonymous to address his alcohol and

28

5

1  substance abuse problem; 5) completing vocational training; and 6) holding a job in the Prison

2  Industries Authority wood finishing department, where he had received exceptional work reports

3  from his supervisors.  Finally, he had favorable psychological evaluations dating from at least 1998.

4  This is just the sort of scenario Biggs envisioned, where the commitment offense is

5  repeatedly relied upon to deny parole notwithstanding the prisoner's exemplary behavior and

6  evidence of rehabilitation subsequent to the commitment offense.  In light of the extensive evidence

7  of McCullough's in-prison rehabilitation and exemplary behavior, blind reliance on the unchanging

8  facts of the murder and his juvenile criminality to deny him parole twenty-one years into his fifteen-

9  to-life sentence violates his right to due process.  Having reviewed the record, this court concluded

10  that the state court's unexplained rejection of the due process claim was an objectively unreasonable

11  application of Hill.

12  Given that this court relied on guidance provided by the Ninth Circuit in Irons, Sass and

13  Biggs when granting the habeas petition, the State's likelihood of success does not appear

14  substantial.  However, at the time of the initial stay order, the Ninth Circuit had not yet applied the

15  reasoning of Irons, Sass and Biggs to overturn a denial of parole.  As a result, the State's likelihood

16  of success was perhaps favorably adjudged in the initial stay order because the Ninth Circuit's future

17  course remained unknown.  This has changed.

18              3.       Recent Holdings and Their Predictive Impact on the State's Appeal

19  In January 2008, the Ninth Circuit cited the due process concerns expressed in Biggs when

20  granting habeas relief to a prisoner challenging an adverse parole determination.  See Hayward, 512

21  F.3d at 545.  In Hayward, the court found that some evidence was not found where the petitioner had

22  already served his minimum sentence and the Governor relied only upon the commitment offense

23  and other factors that have remained unchanged for twenty years.  Id.  The court held that the weight

24  of these factors as predictive of the petitioner's dangerousness upon release had declined because of:

25  1) the passage of time; 2) the petitioner's commitment to education; 3) the lack of recent

26  misconduct; and 4) the parole board's repeated decisions that the petitioner was suitable for parole.

27  Id. at 545–47.

28

6

1    The Hayward holding suggests that this court properly interpreted the law when granting

2    McCullough's habeas petition.  See id.  Many of the pertinent facts in Hayward are also found in the

3    present action, including: 1) time served beyond the minimum sentence; 2) a focus on education;

4    3) a lack of recent misconduct; and 4) repeated decisions by the parole board that McCullough was

5    suitable for parole.  See id.  Differences certainly exist, including arguably the severity of the

6    crimes; however, the similarities suggest that the State's likelihood of success on the merits is not

7    strong or even substantial.[5]

8    Nevertheless, uncertainty still remains due to the Ninth Circuit's order to withhold review

9    pending action by the California Supreme Court.  However, uniformity appears to be forming among

10   the California courts of appeal and this may ultimately influence the California Supreme Court.  In

11   the two cases noted by the Ninth Circuit in its order postponing review of petitioner's appeal, the

12   Second and Fourth Districts of the California Courts of Appeal overturned parole denials, finding

13   that the commitment offense no longer sufficed to demonstrate the evidence of dangerousness

14   necessary to deny parole.  See Shaputis, 2007 WL 2372405, Lawrence, 150 Cal. App. 4th 1511.  In

15   addition, the California Supreme Court has also granted review in two other similar cases from the

16   Sixth and First Districts of the California Courts of Appeal.  See Dannenberg, 156 Cal. App. 4th at

17   1400–01 (2007) ("[T]he record that was before the Governor lacks any evidence that now, more than

18   two decades after his offense, the nature of Dannenberg's offense alone *continues* to support a

19   conclusion that he poses an unreasonable risk of danger to society if released"), review granted (Feb.

20   13, 2008); In re Cooper, 153 Cal. App. 4th 1043 (2007), review granted (Oct. 24, 2007).

21   Together, these decisions by four different California courts of appeal suggest a growing

22   recognition that due process may be violated by continuing ad infinitum to deny parole based on the

23   underlying commitment offense.  These decisions, in conjunction with the Ninth Circuit's decision

24   in Hayward, suggest that the commitment offense may not constitute some evidence of a threat to

25   society when a prisoner has served his underlying sentence, accepted responsibility, devoted time to

26   education and received favorable behavior reports while confined.  While the State may yet succeed

27   on the merits here, it has not convinced this court that the likelihood is strong or even substantial.

28

7

1    B.    Irreparable Injury to the State

2    The State contends that a stay is necessary because allowing McCullough's release would

3    undermine the Governor's authority and expose the state to the possibility that McCullough flees its

4    jurisdiction. Neither of these arguments is persuasive.

5    The Governor's authority is not absolute. The very purpose of the writ of habeas corpus is to

6    provide a failsafe against government action that violates a prisoner's right to due process. Having

7    found such a violation in the present action, the court exercised its constitutional mandate and

8    granted habeas relief. Neither the court's order granting habeas relief nor an order releasing

9    McCullough usurp the Governor's authority any more than is proper under the checks and balances

10    framework instituted by the framers.

11    The possibility that McCullough will flee is a legitimate State concern. See Hilton, 481 U.S.

12    at 777 (a prisoner's flight risk is an appropriate consideration in granting a stay). However, that

13    concern is largely mitigated by the petitioner's viable housing and employment plans that will keep

14    him within the State's jurisdiction upon release. Noonan Dec., Exh's. H–I. Further, the court is not

15    convinced by the State's efforts to use petitioner's marriage as a factor weighing against release.

16    The stability of marriage should ease McCullough's transition back into society after decades in

17    prison. Indeed, McCullough's wife plans to move from her current residence in Texas to California

18    upon his release, which further suggests that McCullough's marriage creates no added flight risk.

19    Feathers Decl., ¶ 3.

20    Notably, the California Supreme Court has found that the State is not always irreparably

21    injured by the release of prisoners in similar cases. In both Lawrence and Cooper, the California

22    Supreme Court declined to grant stays that would have prevented release pending appeal. Noonan

23    Dec., Exh's. F–G. However, it appears that petitioners in Shaputis and Dannenberg are still

24    incarcerated. While the California Supreme Court's authority is not binding, the Lawrence and

25    Cooper releases are persuasive in the present case where the facts already suggest that the State will

26    not be irreparably injured by McCullough's release.

27

28

8

1      C.      Substantial Injury to McCullough

2          To remain in prison after a successful habeas petition injures McCullough and extends the

3   due process violation already recognized by the court. See Docket No. 11.

4          Unforeseen delay on appeal has increased the injury to McCullough beyond what was

5   recognized at the time of the initial stay order. Although a specific date of resolution has never been

6   known, the expected period of delay increased notably when the Ninth Circuit withdrew

7   McCullough's appeal from submission pending decisions in two cases before the California

8   Supreme Court. Noonan Dec., Exh. C. As a result, there is reason to believe that denying release

9   pending appeal will substantially injure petitioner. See Franklin v. Duncan, 891 F. Supp. 516, 521

10  (N.D. Cal. 1995) (Jensen, J.) ("A long delay in the appellate process would weigh in favor of

11  release.").

12

13      D.      The Public Interest

14         This court has already determined that some evidence does not indicate that McCullough's

15  release unreasonably endangers public safety. This determination was central to its decision to grant

16  habeas relief and has been reiterated here. As a result, the public interest in safety is satisfied. The

17  public interest in general deterrence is also satisfied because McCullough has served his underlying

18  sentence—and more. Furthermore, upon release McCullough will be subject to the terms of parole

19  and parole supervision. Cal. Penal Code § 3000.1(a).

20         Finally, the public has an interest in rewarding an inmate's rehabilitation and positive

21  conduct. See Biggs, 334 F.3d at 916–917 (giving weight to "the rehabilitative goals espoused by the

22  prison system"). While imprisoned, McCullough earned his college degree, took advantage of

23  numerous rehabilitation and enrichment programs and received favorable behavior reports. To

24  continue to encourage these proactive behaviors, the public must give credit where it is due.

25  Without evidence that McCullough poses a danger to the public, McCullough's commitment to

26  rehabilitation suggests the public has an interest in immediate release, not further incarceration.

27

28

9

1   CONCLUSION

2       On balance, the four <u>Hilton</u> factors weigh in favor of petitioner. Petitioner's motion to

3   dissolve the stay is GRANTED. Petitioner is ordered released from custody immediately.

4

5       IT IS SO ORDERED.

6

7   Dated: February 25, 2008

8                              MARILYN HALL PATEL

9                              United States District Court Judge

                                 Northern District of California

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

ENDNOTES

1.      McCullough attached to his petition an order by the Los Angeles County Superior Court denying his petition for writ of habeas corpus, but the analysis in that order does not match the reasons in Governor Schwarzenegger's 2004 decision.  The decision thus likely concerns a different decision—perhaps Governor Davis's 2002 decision.  <u>See</u> Petition, Exh. E.  For example, the decision states that the Governor concluded McCullough was unsuitable "because he has demonstrated a lack of remorse for the offense and minimizes his responsibility, . . . and has insufficiently participated in self-help programming."  <u>Id.</u> at 2.  Those observations match the discussion in Governor Davis' 2002 decision.  <u>See</u> Petition, Exh. D at 2.

2.      Petitioner suggests that based on the California Supreme Court's prior record in habeas actions, it takes the court twenty-seven months to issue a decision after it has accepted a matter for review.  If this pattern holds, the court may not issue rulings in <u>Shaputis</u> or <u>Lawrence</u> until December 2009.  <u>See</u> Noonan Dec., ¶ 8.

3.      Petitioner argues that a presumption in favor of release exists pursuant to Federal Rule of Appellate Procedure 23(c).  However, he cites no decisions where Rule 23 was used as the basis for release when a challenge to the underlying conviction was not involved.  Thus, the court declines to so extend the law here.

4.      The court declines to give strong deference to its initial stay order because that order does not include any discussion on the merits of a stay and was issued prior to the court's receipt of McCullough's motion to oppose the stay.

5.      The State suggests that <u>Hayward</u> is unpersuasive because the Ninth Circuit has not previously overturned valid state court decisions denying parole.  This argument is unconvincing.  Controlling precedent is bolstered, not diminished, by its recency.

11